## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JAVIER A. ROEL, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 10-1176 |
| ) | |
| RICARDO RIOS, Warden, ) | |
| ) | |
| Respondent. ) | |

### ORDER

Before the Court is a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 filed by Petitioner, Ricardo Rios ("Rios"). For the following reasons, the Petition [#1] is DENIED.

### BACKGROUND

Roel was convicted in the Southern District of Texas of possession of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(b). He was sentenced to 97 months' imprisonment. From March 6, 2008, through February 3, 2010, Roel was housed at Reeves County Detention Center ("Reeves") in Pecos, Texas. He has since been transferred to FCI Pekin.

Beginning on January 31, 2009, a number of inmates were involved in a disturbance at Reeves that lasted several days. Special Investigative Services ("SIS") conducted an investigation to determine which inmates had participated in the disturbance, ultimately determining that Roel had been a participant. On April 27, 2009, Roel received an incident report stating that he had been found to be a participant in the January 2009 disturbance and charging him with rioting, possession of a hazardous

tool, and conduct which disrupts or interferes with the security or orderly running of the facility.

On April 29, 2009, the Unit Disciplinary Committee ("UDC") held a hearing. Roel stated that the incident report was only partially correct, as he admitted to using another inmate's cellular phone to contact his mother but denied participating in the riot or relaying information to other inmates. After considering the body of the incident report, a memorandum of the Assistant Warden of Programs ("AWP"), and Roel's statement, the Unit Disciplinary Committee found that Roel had committed the acts as charged and referred the matter to the Disciplinary Hearing Officer ("DHO").

A due process hearing was held before the DHO on May 4, 2009. It is undisputed that Roel received notice of the hearing, was presented with a copy of the incident report, and was informed of his rights prior to appearing before the DHO. He waived his right to have a staff member representative at the hearing and indicated that he did not wish to call any witnesses. The hearing was conducted in Spanish. Roel appeared at the hearing and gave a statement. He stated that he had borrowed a phone from another inmate and made only one call to his mother to let her know that he was fine and not to worry if she saw anything about the disturbance on the television. Roel further testified that he did not pass any information on to other inmates, participate in the riot, or attempt to break down doors or windows in his housing unit.

The DHO found that Roel had committed the act of rioting, possession of a hazardous tool, and conduct which disrupts or interferes with the security or orderly running of the facility in violation of Codes 105, 108, and 199 respectively. The DHO based his decision on the report of the AWP detailing his review of the video of the

disturbance. According to the AWP, the video showed Roel gathering with a group of inmates on the recreation yard discussing a document that one of them had received from the Warden. Roel was observed stepping away from the group and speaking on a cell phone equipped with an ear piece, returning to the group and addressing them (as though relaying information from his conversation), and then making a second telephone call after the group dispersed. When the AWP asked Roel where the phone was, he initially denied using a cell phone, but then admitted borrowing the phone from another inmate after the AWP said that he had personally observed Roel using the phone. The DHO further noted the results of the SIS investigation and that Roel admitted having borrowed a cell phone from another inmate and made a call. Additionally, a confidential informant indicated that Roel had been a willing participant in the disturbance, had been used by the leaders as a spokesperson to pass on information to the other inmates, and had been observed on several occasions attempting to break down doors and windows in his housing unit.

The DHO credited the statements of the AWP and confidential informant over those of Roel, basing his decision on the reporting officer's statement, the results of the SIS investigation, the supplemental memo summarizing the video surveillance, the information from the confidential informant, and Roel's admission that he had used a cell phone borrowed from another inmate on the date in question. Roel was sanctioned with a loss of 40 days of good conduct time, forfeiture of 100 days of non-vested good conduct time, and the recommendation for a disciplinary transfer for rioting, a loss of 10 days good conduct time, 30 days disciplinary segregation, and a loss of 240 days of telephone privileges for possession of a hazardous tool, and a loss of 3 days good

3

conduct time and 220 days of commissary privileges for conduct which disrupts or interferes with the safety or orderly running of the institution. Roel received the DHO report on May 5, 2009.

On June 2, 2009, Roel filed an appeal to the Privatization Management Branch ("PMB"), which handles appeals for contract facilities such as Reeves. Roel argued that he was sanctioned for violations for which there was no evidence and that he did not commit. In addressing the appeal, the Administrator of the PMB remanded the case to the institution for further consideration to expunge the violation for conduct which disrupts or interferes with the safety or orderly running of the institution, as that offense is a catch-all used only if the offense conduct is not otherwise described by one of the specifically enumerated offenses. In other words, Roel could not be charged with conduct which disrupts or interferes with the safety or orderly running of the institution if he was also charged with the specific offenses of rioting or possession of a hazardous tool. On August 26, 2009, the DHO expunged that violation only and restored the corresponding three days of good conduct time and commissary privileges.

Roel again appealed to the PMB claiming innocence and requesting the restoration of the remainder of his good conduct time. In denying the appeal, the Administrator of the PMB chronicled the evidence considered by the DHO and concluded that the evidence was sufficient to support the findings of the DHO.

On October 9, 2009, Roel filed a Central Office Administrative Remedy Appeal arguing raising essentially the same arguments as the ones raised in his previous appeal and complaining that he had never been shown the video recordings. In denying the appeal, the Administrator of National Inmate Appeals found that the DHO's

decision was supported by the greater weight of the evidence as detailed in the DHO report and that the DHO's determination was reasonable. It was further found that administrative procedures were substantially followed and that his Due Process rights were upheld during the process.

Roel filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. In his petition, Roel argues that he was denied Due Process when he was denied access to the video surveillance recordings. The Government responded to Roel's petition, and this Order follows.

## DISCUSSION

A petition seeking habeas corpus relief is appropriate under 28 U.S.C. § 2241 when a defendant is challenging the fact or duration of his confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 490 (1973); *Waletzki v. Keohane*, 13 F.3d 1079, 1080 (7th Cir. 1994). The writ of habeas corpus may be granted where the defendant is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. §2241(c)(3).

The practical and realistic considerations underlying our penal system restrict the rights and privileges afforded to a lawfully imprisoned inmate more so than that of an ordinary citizen. *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974). Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings do not apply. *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972). However, the needs of an institutional environment are never so great that a prisoner is wholly stripped of all constitutional protections at the jailhouse door. *Id.* There is "no iron curtain drawn between the Constitution and the prisons of this

country." *Id.* at 555–56. Prisoners may never be deprived of life, liberty, or property without the due process of law. *Haines v. Kerner*, 404 U.S. 519 (1972).

Roel's argument is that his Due Process rights were violated because the DHO found him guilty of the Code violations alleged without having the appropriate evidence to support these findings, as he is actually innocent of the rioting charge. He contends that because he was not allowed to view the video surveillance recordings of the incident in question, such evidence did not really exist. There is no dispute that Roel has a liberty interest in his good conduct time and, as a result, was entitled to due process before it could be taken away from him.

The question for this Court is essentially what process was due to Roel in these proceedings.

> In the prison disciplinary context, due process requires only that the prisoner receive advance written notice of the charges, an opportunity to present testimony and documentary evidence to an impartial decision-maker, and a written explanation for the discipline that is supported by "some evidence" in the record.

*Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003) (internal citations omitted). Roel does not contend that he did not receive advance written notice of the charges. Nor does he assert that he was denied the opportunity to present testimony and documentary evidence. Rather, his argument can best be construed as alleging that the DHO's findings were incorrect.

The DHO's decision satisfies due process if it is supported by some evidence in the record. *Henderson v. U.S. Parole Com'n*, 13 F.3d 1073, 1077 (7th Cir. 1994). This "some evidence" standard requires the Court to determine whether there is any

6

evidence in the record that could support the DHO's conclusion. *Id.* In ascertaining whether this standard has been met, courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good-time credits has some factual basis. *Superintendent, Mass. Correctional Inst., Walpole v. Hill*, 472 U.S. 445, 455–56 (1985). In the context of a prison disciplinary proceeding, due process is satisfied as long as "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Meeks v. McBride*, 81 F.3d 717, 719 (7th Cir. 1996). Therefore, the DHO's decision will only be overturned if no reasonable adjudicator could have found Roel guilty of the offense on the basis of the evidence presented. *Henderson*, 13 F.3d at 1077.

In this case, there is clearly some evidence to support the DHO's finding that Roel was guilty of rioting. Specifically, the SIS investigation of the incident included an interview with a confidential informant certified to be reliable who stated that Roel had been a willing participant in the rioting. Roel admitted that he had used a cell phone during the disturbance. The AWP submitted a memorandum detailing his review of surveillance videos showing: (1) Roel gathering with other inmates and discussing a document that one inmate had received after meeting with the warden; (2) Roel stepping away from the inmates and using the cell phone; (3) Roel returning to the group to address them as though relaying information from his phone conversation; and (4) Roel making another telephone call after the group disbursed. Accordingly, in light of all of this evidence, the standard required by *Henderson* is more than satisfied, and a reasonable adjudicator could have found that Roel was guilty of rioting.

7

To the extent that Roel asserts that his inability to personally view the surveillance video resulted in a denial of Due Process in and of itself, his assertion is unavailing.  Roel was clearly on notice of the existence of the surveillance video prior to his DHO hearing, as the surveillance video was noted in the incident report that he received a week prior to the DHO hearing.  Prior to the hearing, he was also advised of his right to present documentary evidence, yet he declined to do so.  Moreover, the record does not indicate that Roel requested or asserted a need for the surveillance video at any time during his DHO hearing or prior to August 6, 2009.

While material, exculpatory evidence must be disclosed to the petitioner during prison disciplinary hearings, Roel has made no effort to demonstrate how the surveillance video would have been exculpatory.  *Chavis v. Roe*, 643 F.2d 1281 (7th Cir. 1981); *Piggie*, 344 F.3d at 678.  Accordingly, he is not entitled to the relief requested.

## CONCLUSION

For the forgoing reasons, Roel's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 [#1] is DENIED.  This matter is now terminated.

ENTERED this 15th day of March, 2011.

                                                   s/ Michael M. Mihm
                                                 Michael M. Mihm
                                                 United States District Judge